**PERNOD RICARD USA LLC, Plaintiff,**

v.

**BACARDI U.S.A., INC., Defendant.**

No. Civ. No. 06–505–SLR.

United States District Court, D. Delaware.

April 6, 2010.

See also 505 F.Supp.2d 245.

Jack B. Blumenfeld, Esquire and Rodger D. Smith, II, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE. Counsel for Plaintiff. Of Counsel, Vincent N. Palladino, Esquire, Eric R. Hubbard, Esquire, Leslie M. Spencer, Esquire, Brynn Metzger–Hare, Esquire and Margaret C. Lu, Esquire of Ropes & Gray LLP, New York, NY.

William J. Wade, Esquire and Anne Shea Gaza, Esquire of Richards, Layton, & Finger, Wilmington, DE. Counsel for Defendant. Of Counsel, William R. Golden, Jr., Esquire, Mark S. Gregory, Esquire and Matthew D. Marcotte, Esquire of Kelley Drye & Warren LLP, New York, NY.

## OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Plaintiff Pernod Ricard USA, LLC ("plaintiff" or "Pernod") filed this action against Bacardi USA, Inc. ("defendant" or "Bacardi") on August 15, 2006, alleging that defendant has willfully made false and misleading representations concerning the geographic origin of its "Havana Club"-branded rum in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (D.I. 1) Plaintiff also brought a claim for false advertising under the Lanham Act based upon defendant's statements that it owns the rights to the "Havana Club" trademark in the United States. (Id.) On August 21, 2007, 505 F.Supp.2d 245 (D.Del. 2007), the court dismissed the portion of the complaint relating to defendant's asserted rights in the "Havana Club" trademark. (D.I. 41) A bench trial was held between March 3 and 5, 2009 on the geographic origin claim, which was fully briefed post-trial. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Having considered the documentary evidence and testimony, the court makes the following findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Parties and Products

1. Plaintiff is an Indiana limited liability company based in Purchase, New York, employing approximately 1,000 people in the United States. Plaintiff is a leading supplier of spirits in the United States market. (D.I. 125 at 27:21–28:9)

2. Plaintiff is a subsidiary of Pernod Ricard, S.A., a French company.

3. In 2005, plaintiff acquired through an acquisition the Malibu rum brand, along with Kahlua liqueur and some other brands. (Id. at 30:17–20) Malibu is a white flavored rum and is the third largest brand of rum in the market, behind only Bacardi and Captain Morgan. (Id. at 40:5–16) In

2005, approximately 1.3 million cases of Malibu rum were sold in the United States.[1]  (*Id.* at 44:25–45:14)

4.  Defendant is a Delaware corporation with its executive offices located in Miami, Florida.  (D.I. 14 at 2) Defendant is the United States import, sales, and marketing arm of Bacardi & Company Limited,[2] a company founded in 1862 in Santiago de Cuba and which relocated its headquarters to the Bahamas and productions to Puerto Rico in the 1960s.[3]  Defendant markets and distributes several spirits, including Bacardi Superior and Bacardi 151 rums. Bacardi brand rum makes up 41% of all rum sales in the United States.  (D.I. 125 at 44:25–45:9)

## B.  Background[4]

5.  Before the Cuban revolution, Jose Arechabala, S.A. ("JASA"), a Cuban corporation principally owned by the Arechabala family, used the trademark for "Havana Club" rum in Cuba and produced and exported Havana Club rum to the United States.  In 1960, the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets without compensation to the Arechabala family.

6.  The United States imposed the Cuban embargo in 1963.[5]  The embargo is administered by the Office of Foreign Assets Control ("OFAC").

7.  Empresa Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport") is a legal entity organized and existing under the laws of the Republic of Cuba and is an agency and instrumentality of the Cuban government.  Cubaexport registered the "Havana Club" trademark with the USPTO in 1976 and in Cuba in 1984. In 1993, Cubaexport assigned its intellectual property to Havana Rum & Liquors, S.A. ("HR & L").  Pernod Ricard, S.A. and HR & L formed a joint venture whereby Havana Club Holdings ("HCH") and Havana Club International, S.A. ("HCI") were formed.  HR & L assigned its rights to HCH, which granted HCI an exclusive license to the trademark.

8.  Although HCI has been exporting Havana Club rum since 1994, the Cuban embargo bars Pernod Ricard, SA/Cubaexport from selling "Havana Club"—branded rum in the United States.  The only "Havana Club" rum sold in the United States, therefore, is Bacardi's Havana Club rum which is sold in Florida.

9.  In 1995, OFAC issued a license to Cubaexport authorizing its trademark as-

---

1.  The court heard testimony that Malibu rum is "produced in Canada."  (D.I. 125 at 82:24–25) According to Pernod's website, Malibu rum is made in Barbados.  It is the court's understanding that Malibu rum is shipped to Ontario, Canada for bottling for the North American market.

2.  *See, gen., http://www.hoovers.com/company/Bacardi—USA—Inc/cffhri–1.html.*

3.  *See http://www.bacardilimited.com/fact—sheet.html.* From the website, it appears as though Bacardi & Company Limited unified in 1992 with other Bacardi operations (such as Bacardi Corporation in Puerto Rico and Bacardi Imports, Inc. in the United States)

and became Bacardi Limited, which is the parent of defendant.  Galleon, S.A. appears to have merged into Bacardi & Company Limited prior to 1992.  *See Havana Club Holding, S.A. v. Galleon S.A.,* 203 F.3d 116, 119 (2d Cir.2000) (hereinafter, *"HCH v. Galleon"*). Because it is at times unclear what facts may be attributed to each company, the court will generally refer to "Bacardi" in such instances throughout its opinion.

4.  Unless otherwise noted, the court is reciting the history of this litigation from the very detailed background provided in *HCH v. Galleon,* 203 F.3d at 119–22.

5.  *See* 31 C.F.R. §§ 515.101–515.901.

signments to HR & L and from HR & L to HCH pursuant to 31 C.F.R. § 515.318. That license, however, was revoked in 1997 retroactive to the date of issuance.

10. Beginning in 1995, Bacardi (through Galleon S.A.) produced rum in the Bahamas bearing the "Havana Club" name; sixteen cases were shipped to the United States in 1995 and 906 cases were shipped between May 1996 and August 1996.

## C. Prior Litigation

11. "Two words—Havana Club—have been at the center of litigation that has now traversed two federal Circuits, two federal agencies, and two decades." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F.Supp.2d 59, 63 (D.D.C. 2009) ("*Cubaexport*"). The court only describes a portion of that litigation here.

12. In December 1996, HCH and HCI filed a lawsuit to enjoin Bacardi from using the "Havana Club" trademark. In 1997, Bacardi purchased any remaining rights to the "Havana Club" trademark, the related goodwill of the business, and any rum business assets still owned by the Arechabala family. Bacardi has had an application at the USPTO to license the Havana Club name for over a decade.

13. In 1997, the PTO Trademark Trial and Appeal Board affirmed the examiner's denial of Bacardi's applications for registrations for five trademarks: Havana Select; Habana Clasico; and Old Havana for use in connection with "rum"; and Havana Primo and Havana Clipper for use in connection with "rum, distilled spirits specialty containing rum and prepared alcoholic

cocktail containing rum." *In re Bacardi & Co. Ltd.*, 48 U.S.P.Q.2d 1031 (T.T.A.B. 1997). The Board found the trademarks "primarily geographically deceptively misdescriptive of the identified goods because purchasers' beliefs that the rum products to be sold under the proposed marks originate in Havana, Cuba, is a mistaken belief." [6] *Id.* at 1035.

14. In 2000, on appeal from the United States District Court for the Southern District of New York, the Second Circuit concluded that the Cuban embargo barred assignment to HCH of the "Havana Club" trademark registered in the United States, that American courts are precluded by statute [7] from enforcing any rights HCI might have to trademark protection, and that HCI .lacked standing to assert its Lanham Act claims related to ownership of the Havana Club trademark. *HCH v. Galleon*, 203 F.3d at 119.

15. Defendant began selling "Havana Club" (white) rum in the United States in August 2006; this rum is produced in Puerto Rico. (D.I. 126 at 241:25–242:19; 252:14–25) Defendant's "Havana Club" rum is currently only sold in Florida. (D.I. 125 at 12:5–8; D.I. 126 at 190:6–9) Defendant has not iterated any specific plans to expand its distribution, but will not commit to not expanding its distribution of Havana Club to the other 49 states. (D.I. 128 at 40–41) As defendant already has a nationwide distribution network, a national distribution of Havana Club rum could be effectuated in 30 to 60 days. (D.I. 125 at 65:8–16)

16. The USPTO registration of Cubaexport's "Havana Club" mark was renewed multiple times and was set to expire in 2006. The OFAC did not grant a specif-

---

**6.** Bacardi's argument that it intends to reestablish itself in Cuba upon the lift of the U.S. embargo was not given weight by the Board.

**7.** Pub.L. No. 105–277, 112 Stat. 2681 (Oct. 21, 1998) ("Section 211"), specifically, § 211(b).

ic or general license to renew the mark. In 2009, Cubaexport's case against the OFAC for failure to renew its trademark was dismissed by the United States District Court for the District of Columbia. *Cubaexport,* 606 F.Supp.2d at 63.

### D. Bacardi's "Havana Club" Rum Bottle and Marketing Materials

17. Defendant launched its "Havana Club" rum in Florida in 2006. The project was "made a priority" at that time "[g]iven the recent, strong interest in Cuban products by U.S. Consumers." (JTX–2) In designing the Havana Club packaging, "[t]he main idea [defendant] wish[ed] to convey is that [its] Havana Club rum is a Cuban-style rum of the highest quality and has a century old Cuban heritage of being made by the Arechabala family according to a secret family formula." (*Id.*) Bacardi selected the following frosted glass design for the Havana Club rum bottle. (PTX–61)

The acid-etched bottle achieves a distinctive and retro look with "super-premium vodka cues." (PTX–43) It is intended to convey the "sultry seduction of pre-revolutionary Havana nightlife," and a "glamorous sophistication" reminiscent of 1930s Hollywood. (*Id.;* D.I. 124 at 124:22–25) The underlying theme is "retro-chic." (PTX–43)

18. A "retro-typeface" was used for the "Havana Club" brand name. (*Id.*) Beneath the brand name appears in smaller capital letters: "Puerto Rican Rum."

19. The back of the Havana Club rum bottle reads as follows.

(JTX–6) As depicted above, the bottle states that "Havana Club rum is a premium rum distilled and crafted in Puerto Rico using the original Arechabala family recipe" that was "[d]eveloped in Cuba circa 1930." (*Id.*) The parties refer to the foregoing as "Cuban heritage statements."

20. The "sultry seduction of pre-revolutionary Havana nightlife" is a recurring quotation in defendant's advertizing.[8] (PTX–43) Imagery of circa 1950s Cuban nightlife is used in Havana Club promotional materials. (*Id.*) The following are sample images from defendant's "relaunch plan."

**8.** Defendant has used marketing devices such as billboards, case cards, shelf-talkers, table-tent inserts, display racks, bottle display racks, shakers and information cards to promote its Havana Club rum. (D.I. 125 at 132:2–18; 139:15–18; D.I. 126 at 257:24–258:15)

(PTX–43)

21.  The Havana Club website [9] was designed with similar imagery. Cuban music plays when the page is accessed, and pre-revolutionary Cuban songs are also utilized in other Havana Club advertising. (PTX–41) Defendant has sponsored "Havana Nights" promotions featuring the live music of 4–time Grammy award-winning Cuban jazz artist Arturo Sandoval. (JTX–5; D.I. 126 at 282:17–20)

9.  http://havanaclubus.com.

22.  The Havana Club home page states; "The Return of Havana Club™ Rum"; "A premium rum that embraces the sultry seduction of Havana night life." (PTX–61) The website suggests using Havana Club rum in three cocktails: a "Havana Club Cuba Libre" (a rum and cola); a "Havana Club Mojito Cocktail" (a traditional lime and mint-flavored drink); and a "Havana Club Classic Daiquiri" (a sweetened lime drink). (*Id.*) One such recipe page is reproduced below.

23. Defendant does not dispute that it has intentionally positioned Havana Club as a Cuban heritage product, or that it seeks an association between Havana Club and a raffish, pre-revolutionary Cuban lifestyle circa 1930–1950. (D.I. 126 at 247:23–248:6; D.I. 128 at 37) It is defendant's position that it shares JASA's Cuban heritage and, having acquired the Havana Club mark from the Arechabala family, has a right to (truthfully) advertise the Cuban heritage of its Havana Club rum.

### E. Discussion

#### 1. Standing

24. Prior to addressing the merits of plaintiff's Lanham Act claim, the court first notes, and dismisses, defendant's argument that plaintiff lacks standing.[10] Plaintiff is a domestic company. Its Malibu rum product competes directly with defendant's Havana Club rum in the Florida market. The Second Circuit has affirmatively stated that "[a]ny rum producer

selling its product in the United States can obtain standing to complain about Bacardi's allegedly false designation of origin as long as it can demonstrate the commercial injury required for an action under section 43(a)." Such is the case here. *HCH v. Galleon*, 203 F.3d at 134.

#### 2. Lanham Act—false advertising

#### a. Threshold issues

25. In its complaint, plaintiff asserts that defendant's "use of Havana Club for a rum not produced in Cuba and [its] statements that its Havana Club rum is the rum that was made in Cuba and sold in the United States before 1960 are false and misleading representations concerning the geographic origin of [defendant's] rum" in violation of 15 U.S.C. § 1125(a). (D.I. 1) In its post-trial papers, plaintiff specifies that it brings its claim under 15 U.S.C. § 1125(a)(1)(B), or section 43(a)(1)(B), the false advertising portion of the Lanham Act.[11] (D.I. 107 at 18–19)

---

10. Defendant's second affirmative defense.

11. Hereinafter, the court will reference the Lanham Act provisions (§§ 43(a)(1)(A) and (B)) rather than the U.S.Code.

26. In order to prevail on a § 43(a)(1)(B) claim in this Circuit, plaintiff must prove, by a preponderance of the evidence, that: (1) Bacardi has made false or misleading statements as to its Havana Club rum;[12] (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the representation at issue was used in commerce; and (5) there is a likelihood of injury to plaintiff in terms of declining sales, loss of market share, or loss of good will. *See* 15 U.S.C. § 1125(a)(1)(B); *Warner–Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91–92 (3d Cir.2000).

27. In its papers, plaintiff argues that defendant's use of the name "Havana Club" is misleading; no differentiation is made between the use of "Havana Club" on the rum bottle or "Havana Club" (or other Cuban-inspired themes) in defendant's promotional materials. Plaintiffs case is built around testimony regarding a survey taken by its expert, Walter McCullough ("McCullough"). As explained by McCullough at trial, this survey purports to establish that defendant's use of "Havana" in the Havana Club name deceives a significant number of likely rum purchasers into believing that defendant's rum is made in Cuba. McCullough's survey assessed consumer confusion imparted by the Havana Club rum **bottle**. (PTX–47)[13] There is no survey evidence regarding defendant's advertising. On this record, plaintiff could not establish actual confusion with respect to defendant's print ads, commercials, or other promotional advertisements.

28. It is not self-evident that "Havana Club" is an actionable "statement" under § 43(a)(1)(B), in other words, a "statement[ ] of fact capable of being proven false." *See Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, Civ. No. 00–3683, 2001 WL 856946, *10 (E.D.Pa. July 26, 2001) (citations omitted);

12. The court previously dismissed plaintiffs claim regarding defendant's representation that it owns the Havana Club trademark (count II) because a statement concerning trademark rights, which are not a good or service and do not confer information regarding the nature, characteristics or qualities of its rum, cannot be the basis for a false advertising claim under 15 U.S.C. § 1125(a)(1)(B). (D.I. 41)

Although defendant requested dismissal of count II, it sought to introduce evidence regarding the trademark ownership issues at trial. The court precluded such evidence. Defendant, however, was permitted to make an offer of proof in this regard. (D.I. 102)

Defendant's third affirmative defense, that plaintiff is impermissibly seeking to prosecute this case in concert with (and to promote the interests of) Cubaexport and HCH in contravention to Section 211 of the Omnibus Consolidation and Emergency Supplemental Appropriations Act (Public Law No. 105–277, 112 Stat. 2681 (Oct. 21, 1998)) and other statutes, relates to plaintiffs (now-dismissed) count II. That is, the "interests" of Cubaexport and HCH relate to the ownership and/or control of the "Havana Club" trademark—an issue not presently before the court.

Similarly, defendant's seventh affirmative defense, that defendant is permitted to use the "Havana Club" trademark regardless of any geographical misdescriptiveness because it used that trademark prior to January 1, 1996, *see* 15 U.S.C. § 1052(a) and H.R.Rep. No. 103–316, at 269 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4294, is not addressed herein. Notwithstanding that Lanham Act § 2(a) concerns the (continued) registration of a trademark, not the use of a trademark in commerce, defendant's property rights in the "Havana Club" trademark are not at issue in this § 43(a)(1)(B) case. *See gen.* 2 McCarthy on Trademarks and Unfair Competition § 14:40 (4th ed.2010).

13. Plaintiff also admitted a 1997 McCullough survey regarding Bacardi's Bahamian Havana Club rum. (PTX–67) This survey also questioned the message imparted by Bacardi's rum bottle.

*see also American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390–91 (8th Cir.2004). "Havana Club" is not the same as "Made in Havana" or even "Havana Rum," such as would impart a specific, verifiable claim.[14] *Compare The Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 30 F.3d 348 (2d Cir.1994) (holding "Swiss Army knife" not geographically descriptive such that its use for Chinese-made pocket knives constitutes a false designation of geographic origin) *with Scotch Whiskey Ass'n v. Consolidated Distilled Prods., Inc.*, 210 U.S.P.Q. 639 (N.D.Ill. 1981) ("Loch–A–Moor" held geographically descriptive of Scotland, where label stated that the bottle contents are a product of an "old Isle of Skye Recipe"). The only issue presented to the court is whether defendant's use of "Havana Club" is false or misleading.

29. On this issue, it is defendant's position that it is permitted to accurately portray Bacardi's Cuban heritage and, therefore, the Havana Club label is not false. Alternatively, the "Puerto Rican Rum" statement prominently displayed on the front of the bottle, along with the statement that the rum is "crafted in Puerto Rico" on the back of the bottle, negate any customer confusion regarding the source of that product.

### a. "Geographic origin" and heritage

30. The nature of the deception alleged by plaintiff is a misrepresentation of the "geographic origin" of defendant's rum. At this juncture, it is necessary to define what constitutes a misrepresentation of "geographic origin" under § 43(a)(1)(B) such as to invoke Lanham Act liability. The case at bar presents a unique question: is "geographic origin" more akin to "heritage" or to the "source of production"? While defendant concentrates on its rum's Cuban history, plaintiff's focus is on defendant's Puerto Rican production site.

31. Neither party has addressed the precise meaning of "geographic origin" as used in § 43(a)(1)(B).[15] The court has not located caselaw specifically defining "geographic origin," however, the term "origin" as used in the Lanham Act has been addressed by several courts. Justice Stevens has noted the following in this regard:

> It is appropriate to begin with the relevant text of § 43(a) [[16]]. . . . Section

---

14. In contrast, the Federal Circuit has recently considered the Board's section 2(a) rejection of the registration of the "Moskovskaya" mark for vodka, which translates to "of or from Moscow." *In re Spirits Int'l, N.V.*, 563 F.3d 1347 (Fed.Cir.2009). The use of such a mark could potentially be viewed as a "statement" under Lanham Act jurisprudence, insofar as it conveys a verifiable claim.

15. An issue identified by the court as warranting clarification at the pre-trial conference. (D.I. 131 at 21)

16. The text considered by the Supreme Court was § 43(a) prior to the 1988 amendments, as follows:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982 ed.).

43(a) provides a federal remedy for using either "a false designation of origin" or a "false description or representation" in connection with any goods or services. The full text of the section makes it clear that the word "origin" refers to the geographic location in which the goods originated, and in fact, the phrase "false designation of origin" was understood to be limited to false advertising of geographic origin. For example, the "false designation of origin" language contained in the statute makes it unlawful to represent that California oranges came from Florida, or vice versa. For a number of years after the 1946 enactment of the Lanham Act, a "false description or representation," like "a false designation of origin," was construed narrowly....

Over time, the Circuits have expanded the categories of "false designation of origin" and "false description or representation." One treatise identified the Court of Appeals for the Sixth Circuit as the first to broaden the meaning of "origin" to include "origin of source or manufacture" in addition to geographic origin. [17]

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 777–79, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring in judgment) (footnotes omitted).

32. The Supreme Court further considered Justice Stevens's comments in *Dastar Corporation v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), a case involving the unaccredited copying of a once-copyrighted work. At issue in that § 43(a)(1)(A) case was whether the copier was the "origin" of the products it sold as its own, In this context, the Supreme Court noted as follows:

Although a case can be made that a proper reading of § 43(a), as originally enacted, would treat the word "origin" as referring only "to the geographic location in which the goods originated," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 777, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring in judgment), the Courts of Appeals considering the issue, beginning with the Sixth Circuit, unanimously concluded that it "does not merely refer to geographical origin, but also to origin of source or manufacture," *Federal–Mogul–Bower Bearings, Inc. v. Azoff,* 313 F.2d 405, 408 (6th Cir.1963), thereby creating a federal cause of action for traditional trademark infringement of unregistered marks. *See* 4 McCarthy § 27:14; *Two Pesos, supra,* at 768, 112 S.Ct. 2753[.]

* * *

We think the most natural understanding of the "origin" of "goods"—the source of wares-is the producer of the tangible product sold in the marketplace[.] [A]s used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain.

*Dastar Corporation,* 539 U.S. at 29–30, 31–32, 123 S.Ct. 2041 (footnotes omitted). Put another way, the term refers "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37, 123 S.Ct. 2041.

33. The foregoing (§ 43(a)(1)(A)) authority is not particularly instructive on the meaning of "geographical origin" as used in § 43(a)(1)(B). The focus of "origin" in the context of § 43(a)(1)(A) is on

---

**17.** *Federal–Mogul–Bower Bearings, Inc. v. Azoff,* 313 F.2d 405, 408 (6th Cir.1963).

the manufacturer or producer; applying that focus to the interpretation of "geographical origin," that term would implicate the place of manufacture, rather than the source of that product's recipe or its heritage. It is plausible that a product's history is an "idea, concept or communication" embodied in the goods rather than a geographical designation. *Dastar*, 539 U.S. at 37, 123 S.Ct. 2041. It is also plausible that "geographical origin" is broad enough to encompass some aspect of a good's history. The Trademark Trial and Appeal Board at the PTO appears to take this latter position. *See Corporacion Habanos, S.A. v. Anncas, Inc.*, 88 U.S.P.Q.2d 1785, 2008 WL 4409768, *6 (Sept. 26, 2008) (precedential) ("a product may be found to originate from a place, even though the product is manufactured elsewhere") (citing *In re Nantucket Allserve Inc.*, 28 U.S.P.Q.2d 1144 (T.T.A.B. 1993)). The court analyses the case under both alternatives, and finds the result to be the same.

### b. Defendant's rum bottle accurately provides its production location

34. If "geographical origin" is limited to the source of production or manufacture, plaintiff cannot prevail on its § 43(a)(1)(B) claim. In this case, defendant's bottle accurately states that Havana Club is a "Puerto Rican Rum"[18] and is "crafted in Puerto Rico."

35. In *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744 (5th Cir.2006), the Fifth Circuit reviewed the constitutionality of a Louisiana statute prohibiting the use of "Cajun" in products' labeling unless that product was produced or "substantially transformed by processing" in Louisiana. Piazza's products at issue, "Cajun Boy" and "Cajun Delight" catfish, were labeled with the products' country of origin (China). 448 F.3d at 753. The Fifth Circuit affirmed the district court's finding that the statute violated Piazza's First Amendment right to use the "Cajun Boy" and "Cajun Delight" tradenames because: (1) the use of these names was only "potentially misleading, not actually or inherently misleading" because the labels indicate that the products are made in China; and (2) Louisiana's interests in protecting consumers is substantial; but (3) the statute was more extensive than necessary to protect this interest because "there was **no deception present** to be prevented" and the statute "contained no exception for sellers like Piazza who disclose truthful information (country of origin) on their food labels that **eliminates** the deceptive nature of the labeling." *Id.* (emphasis added). *Piazza's Seafood World* is not completely analogous on its facts, but establishes that labeling cannot be deceptive as to geographic origin where it contains a truthful disclosure of the product's source, such as "Puerto Rican Rum" or "crafted in Puerto Rico." Defendant has placed these statements on both sides of its bottle, rather prominently, and following its use of the Havana Club name.

36. An ad that is truthful on its face cannot be proven to be misleading by surveying customers. *See* 5 McCarthy on Trademarks and Unfair Competition § 27:53 (citing *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 886 (7th Cir.2000)). As the Seventh Circuit has explained, survey research does not determine the meaning of words or "set the standard to which objectively verifiable

---

18. There was no argument by plaintiff that "Puerto Rican Rum" conveys anything other than that the rum originates in Puerto Rico. Pernod's proffered survey regarding the Havana Club bottle did not contain specific questions about "Puerto Rican Rum," presumably because it did not want to flag that (clarifying) language for the surveyed consumers.

claims must be held." *Mead Johnson,* 201 F.3d at 886.

> [I]nterpreting "misleading" to include factual propositions that are susceptible to misunderstanding would make consumers as a whole worse off by suppressing truthful statements that will help many of them find superior products. A "misunderstood" statement is not the same as one designed to mislead. Reducing ads and packaging to meaningless puffery can't be the objective of the Lanham Act—though it is a logical (and likely) outcome of [plaintiff's] approach, given the normal level of confusion and misunderstanding reflected in consumer surveys.

*Id.* at 886–87. The Havana Club label clearly and truthfully provides the origin of defendant's rum, and is not deceptive.[19] *Id.*

37. The court notes that the correctness of its holding is further supported by the fact that the federal agency charged with monitoring consumer deception in labeling has also found the Havana Club label at issue to be non-deceptive.[20] In April 2006, Bacardi provided an "Application for and Certification/Exemption of Label/Bottle Approval" to the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau (the "TTB"). (DTX–103) The TTB is charged with "[e]nsur[ing] that labeling and advertising of alcohol[ic] bev-

erages provide adequate information to the consumer concerning the identity and quality of the product;" and "[p]revent[ing] misleading labeling or advertising that may result in potential for consumer deception regarding the product." *See http:// www.ttb.gov/about/stat—auth.shtml.* As part of its application, Bacardi provided images of the front, back, and upper labeling of a Havana Club bottle for inspection. (*Id.*) The TTB approved Bacardi's certificate on April 26, 2008. (*Id.*)[21]

38. Additionally, John Gomez, a former Marketing Manager for Bacardi involved in developing the Havana Club bottle, testified that the words "Puerto Rican Rum" were included underneath "Havana Club" on the bottle for several reasons. Puerto Rico has an excellent reputation for producing rum and Bacardi rum is produced there. Additionally, the Commonwealth of Puerto Rico requires that any products produced there is labeled as Puerto Rican in origin. There are minimum size guidelines for the typeface of this labeling; Bacardi exceeded this minimum typeface with its label on Havana Club rum. (D.I. 126 at 260:4–25)

### c. Defendant and Havana Club rum have a Cuban heritage

39. The record clearly demonstrates that Havana Club rum has a Cuban heritage and, therefore, depicting such a heri-

19. A court is permitted to find, as a matter of law, that no reasonable consumer could be misled by the challenged advertising. *See Merisant Co. v. McNeil Nutritionals, LLC,* 515 F.Supp.2d 509, 528 (E.D.Pa.2007) (citing *Haymond v. Lundy,* Civ. No. 99–5048, 2001 WL 15956, at *4 (E.D.Pa. Jan. 5, 2001)).

20. By contrast, the 1997 decision finding Bacardi's "Havana"—related trademarks geographically deceptive is less persuasive. There is no indication that the TTAB had before it Bacardi's whole label, including the "Puerto Rican Rum" text; it was reviewing the trademark examiner's rejection of only the particular, applied—for trademarks of

"Havana Select," "Habana Clasico", "Old Havana," "Havana Primo" and "Havana Clipper" for use in connection with rum. *In re Bacardi & Co., Ltd.,* 48 U.S.P.Q.2d 1031.

21. The court notes, but overrules, Pernod's objection to this exhibit on foundational grounds. There is a box on the application indicating it is a "resubmission after rejection." (DTX–103) The history of Bacardi's application is unclear but ultimately irrelevant to the point conveyed by the document—that the current Havana Club labeling was approved by the TTB.

tage is not deceptive. Bacardi was originally a Cuban company. It acquired any remaining rights to "Havana Club," as well as the Havana Club rum recipe, from the Arechabala family. The First Amendment protects defendant's ability to accurately portray where its rum was historically made—as opposed to claiming that the product is still made there. *See Piazza's Seafood World*, 448 F.3d at 753 (commercial speech is protected when it concerns lawful activity and is "not misleading") (citing *Central Hudson Gas v. Pub. Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)); *see also U.S. v. United Foods, Inc.*, 533 U.S. 405, 426, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001) (the First Amendment's basic objective is the "protection of the consumer's interest in the free flow of truthful commercial information.") (collecting cases).

40. Defendant has incorporated certain changes to the Arechabala recipe.[22] Luis Planas ("Planas"), defendant's master rum blender, testified at trial that he based the production plans for defendant's rum on the Arechabala recipe, specifically, the details on blending components, the sugar addition, the congenetics, the aging requirements, and the filtration process. He also took into account the profile (complexity, aroma, and flavor) of JASA's rum. It took Planas six months to set the parameters for the fermentation process but, due to the length of the fermentation process, it took over three years to finalize defendant's product. (Tr. Vol. C (sealed) at 13:17–18:17) The most significant manufacturing change highlighted in plaintiffs papers is the type of wood defendant uses for its aging barrels, which differs from that used in the Arechabala recipe. (D.I. 107 at 14)

41. Plaintiff does not cite any caselaw to support its position that formula or manufacturing changes may annul a product's history or heritage, rather, it alleges only generally that the fact that Bacardi utilized the Arechabala recipe in formulating its rum is "irrelevant as a matter of law" insofar as the rum is produced in Puerto Rico. (D.I. 107 at 33) The court disagrees with plaintiff that defendant's incorporation of ingredients from other (non-Cuban) geographic areas into its Havana Club rum renders its heritage claim untruthful. "A product might be found to originate from a place where the main component or ingredient was made in that place," but there is no indication that Havana Club rum has one "main ingredient." *See Corporacion Habanos, S.A.*, 2008 WL 4409768.

42. Plaintiff highlights Bacardi's production alterations, but has provided no evidence that today's Havana Club rum **product** differs from the original pre-revolutionary Cuban rum in any significant respect. By contrast, Ramon Arechabala considers defendant's Havana Club rum to be "almost identical" to the original JASA rum.[23] (Tr. Vol. B. (sealed) at 14:6–15:6) This may not be relevant to the rum's "geographic origin," but it verifies that defendant's Havana Club has not strayed far (if at all) from its heritage.

43. Based upon the foregoing, it is the court's conclusion that defendant's formula and manufacturing alterations do not annul the Cuban heritage of defendant's Havana Club rum, which is derived primarily from the Arechabala recipe. Defendant has a First Amendment right to accurately portray where its product was historically made and, therefore, plaintiff cannot dem-

---

22. The exact nature of the Arechabala recipe and defendant's manufacturing process are confidential to defendant.

23. As the expression goes, "if it looks like a duck, swims like a duck and quacks like a duck, then it probably is a duck."

onstrate that defendant's use of "Havana Club" violates section 43(a)(1)(B) of the Lanham Act.

## III. CONCLUSION

44. Under either approach, the court was not required to analyze actual (or likely) consumer deception.[24] The court concludes that defendant's Havana Club rum has a Cuban heritage; defendant's Havana Club rum labels truthfully (and prominently) provide the geographic location of the product's manufacture (Puerto Rico); and the labeling, therefore, is neither false nor misleading. An order shall issue entering judgment in favor of defendant.[25]

### ORDER

At Wilmington this 6th day of April 2010, consistent with the opinion issued this same date;

IT IS ORDERED that the clerk of court shall enter judgment in favor of defendant and against plaintiff.

---

24. Defendant's objection to the admission of McCullough's expert report (which included his survey) into evidence is, therefore, moot.

25. Although defendant's additional affirmative defenses are rendered moot by the court's holding, the court notes the following.

Through its offer of proof, defendant sought to establish its fourth affirmative defense—that plaintiffs suit is barred by a three-year statute of limitations. Defendant's argument is predicated on this court's finding the following facts: (a) Pernod Ricard, S.A. acquired a number of brands of spirits from Seagrams Company in 2001, including Wild Turkey bourbon, produced by Company, Inc. USA ("Austin Nichols"); (b) plaintiff succeeded to the U.S. spirits distribution business of Austin Nichols in or about 2002; and (c) plaintiff is a successor-in-interest to Austin

Nichols, and is bound by its knowledge of Galleon S.A.'s sale of over 900 cases of "Havana Club" rum in 1995 and 1996. At trial, the court heard testimony from Jeffrey Agdern, plaintiffs Vice President of Marketing, that Austin Nichols still exists today and operates as the producer of that product. (D.I. 125 at 39:4–9) Defendant does not identify admitted evidence that could refute this testimony.

Defendant also primarily relied on its offer of proof in support of its fifth affirmative defense, that issue preclusion bars plaintiff—whom defendant asserts is acting under the direction and control of Pernod Ricard, S.A.—from relitigating issues decided against HCH and HCI in the New York litigation. Since plaintiffs § 43(A)(1)(B) claim was not before the Second Circuit, this proffer is irrelevant and the defense moot.